IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Nancy Woods, et al.,                                      Case No. 3:09CV2412

                    Plaintiffs

        v.                                               ORDER

Linnie Willis, et al.,

                    Defendants

        This is a suit under 42 U.S.C. § 1983 by present and former recipients of benefits under the

Housing Choice Voucher Program of § 8 of the U.S. Housing Act of 1937 ("Housing Act"), 42

U.S.C. § 1437f. Defendants administer the Section 8 program in which the plaintiffs participate and

participated.

        Plaintiffs claim that defendants have illegally deprived them of their property interest in the

Housing Choice Voucher Program without due process and in violation of federal law. They seek

declaratory, injunctive and monetary relief, class action certification and attorneys' fees.

        Pending is defendants' motion to dismiss. [Doc. 17].

        For the reasons that follow, defendants' motion shall be granted in part and denied in part.

1

**Background**

Plaintiffs Nancy Woods, Caulene Fuller and Carla McCullough are Lucas County, Ohio, residents who have participated in the Housing Choice Voucher Program operated by defendant Lucas County Metropolitan Housing Authority (LMHA).

Defendant Linnie Willis is the Executive Direct of LMHA. Defendant Margaret Miracola is the current Director of LMHA's Section 8 Housing Choice Voucher Program. Defendant Candace Renner is a hearing officer for LMHA.

*Nancy Woods*

Woods entered into a lease approved by the Housing Authority in 2007. Defendants scheduled Woods' unit for an annual Housing Quality Standards inspection on March 6, 2008. The property failed the inspection due to the landlord's failure to maintain the unit in accordance with housing quality standards. Defendants gave the landlord notice that the property failed the inspection and offered him an opportunity to make repairs.

On March 27, 2008, Woods attended a Rehousing Update Class at LMHA.

On April 4, 2008, the property failed a second inspection.

On April 10, 2008, Defendants notified Woods and the landlord that LMHA would cancel housing benefits on July 1, 2008, if the landlord failed to make the required repairs.

On May 22, 2008, Woods submitted a Request for Tenancy Approval for a different property that would allow her to transfer her Housing Choice Voucher to a new address. Defendants denied her request to move.

On June 26, 2008, Woods submitted a Request for Tenancy Approval for a third property. Defendants denied this request. Also during the month of June, Woods gave notice to her landlord of her intent to vacate the rental unit.

On July 1, 2008, Woods left the unit because – based on the notice from defendants – she knew that LMHA would cancel its § 8 assistance for her rental unit on July 1, 2008.

Woods moved with her children into a motel.

Woods contacted defendants on or about July 11, 2008. Defendants informed her that she should submit a new request. She filed her third Request for Tenancy Approval.

On July 11, 2008, defendants sent a letter to Woods indicating that as of July 15, 2008, her "Housing Choice Voucher eligibility/application will be terminated" because she "vacate[d] without notice." [Doc. 12, at 10].

The agency held an informal hearing on December 8, 2008. Renner, LMHA hearing officer, presided. The only people present during the hearing were Renner, Woods and two attorneys representing Woods.

The Housing Authority presented no witnesses. The only evidence at the hearing was the testimony of Woods. "After listening to [] Woods' testimony, Renner indicated she would make a decision after reviewing LMHA's file records." [Doc. 12, at 11].

On January 16, 2009, Renner issued a decision stating that Woods would remain terminated from the housing choice voucher program.

*Caulene Fuller*

LMHA enrolled Fuller in the LMHA Section 8 Housing Choice Voucher program on or about August, 2008.

3

On August 21, 2009, LMHA issued Fuller a Notification of Cancellation stating that as of October 1, 2009, LMHA would terminate her eligibility for the program for "Fraud, in stating that you have custody of [D.W.]." [Doc. 12, at 12].

The agency held an informal hearing on September 10, 2009. Renner, hearing officer for LMHA, presided at the hearing. The only people in the room during the hearing were Renner, Fuller, Fuller's aunt and Fuller's son, D.W.

Renner presented evidence in support of the LMHA decision to terminate Fuller from the program. This evidence included a letter written by Jason Watts, the father of D.W., alleging that Fuller "told people she has custody of D.W." [Doc. 12, at 13]. Renner also relied on court documents.

On September 21, 2009, defendants issued a decision stating: "The hearing resulted from the fact that you were involved in fraud, stating custody of [D.W.]. As a result of your hearing, you may remain on the program with the removal of [D.W.], until such time as you are granted legal custody." [Doc. 12, at 13].

*Carla McCullough*

Carla McCullough became a participant in the LMHA Section 8 Housing Choice Voucher program in 2002. In 2002, she also signed a landlord-tenant rental agreement.

In 2006, McCullough accepted a job that brought in varying amounts of money each month. Her LMHA caseworker told her she should bring her pay stubs to her annual recertification review.

On or around July, 2008, McCullough attended her annual recertification. She gave her caseworker her pay stubs.

4

In a letter dated September 3, 2008, LMHA informed McCullough that her voucher would be terminated due to her being over-income. The letter stated she had until September 12, 2008, to request a hearing. McCullough never received this letter.

On or around September 17, 2008, McCullough's neighbor told McCullough that she had received the letter intended for McCullough. At that time, McCullough asked for a hearing. She submitted a written hearing request, explaining why she missed the original hearing request deadline.

On or around January, 2009, McCullough spoke with her Zepf Center caseworker about the problem and requested her assistance in contacting LMHA. The caseworker contacted a representative from LMHA and explained that McCullough had a defense to the over-income allegation. The caseworker asked for a hearing to explain the situation. The LMHA representative told the caseworker that he would review McCullough's file and let her know if a hearing was necessary.

McCullough never received a hearing.

### Standard of Review

A claim survives a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, U.S. , 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (internal citations omitted).

5

A complaint is insufficient "if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, *supra*, 129 S. Ct. at 1949 (citing *Twombly*, *supra*, 550 U.S. at 557) (internal quotation omitted).

I must also "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). Plaintiff, however, must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, *supra*, 550 U.S. at 555; *see also Iqbal*, *supra*, 129 S. Ct at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### Discussion

Defendants move to dismiss on four grounds: 1) plaintiffs have failed to state a § 1983 claim under the Due Process Clause of the Fourteenth Amendment; 2) qualified immunity; 3) quasi-judicial immunity; and 4) defendants Miracola and Renner are not liable to plaintiffs for official capacity claims.

### A. Due Process Claims[1]

Plaintiffs' first through fourth claims for relief allege defendants violated their Fourteenth Amendment right to due process by failing to: 1) give timely pre-termination notice stating the basis for termination; 2) provide program participants with an opportunity to confront and cross-examine each witness relied on by the housing authority; 3) make decisions solely on evidence at the hearing

---

[1] Plaintiff McCullough does not have standing to challenge the actions of defendants. Her time for requesting a hearing had passed and she thus did not have the requisite injury required for standing. *See Monsanto v. Geertson Seed Farms*,     U.S.    , 130 S. Ct. 2743, 2752 (2010). Her claims are therefore dismissed.

6

and issue a written decision specifically setting forth the reasons for the decision; and 4) conduct informal hearings with an impartial hearing officer.

Plaintiffs' participation in the Section 8 Housing Choice Voucher Program, administered by LMHA, is a property interest protected by the requirement of procedural due process. *Davis v. Mansfield Metro. Housing Auth.*, 751 F.2d 180, 184 (6th Cir. 1984). Agency divesture of a property interest is lawful only if preceded by:

> adequate notice of the grounds for termination, a right to examine relevant documents of the public housing authority prior to hearing, the right to counsel, and the right to cross-examine witnesses. In addition, the tenant has a right to a written decision by an impartial hearing panel based solely on evidence presented at the hearing.

*Id.* at 185 (citing 24 C.F.R. § 866.4(l) and §§ 866.53-57)

The Fourth Circuit has described the five element of procedural due process in a proceeding determining whether to terminate a tenant's § 8 participation:

> (1) timely notice from the housing authority stating the basis for the proposed termination, (2) an opportunity by the tenant to confront and cross-examine each witness relied on by the housing authority, (3) the right of the tenant to be represented by counsel, (4) a decision, based solely on evidence adduced at the hearing, in which the reasons for the decision are set forth, and (5) an impartial decision maker.

*Clark v. Alexander*, 85 F.3d 146, 150 (4th Cir. 1996) (citing *Goldberg v. Kelly*, 397 U.S. 254, 266-71 (1970)).

Plaintiffs allege LMHA terminated them without giving them four of the five procedural due process rights.[2]

Defendants claim they provided plaintiffs with all requisite due process.

---

[2] Plaintiffs had counsel at their informal hearings.

7

## 1. Notice

A housing authority must provide a Section 8 recipient with "timely notice . . . stating the basis for the proposed termination." *Goldberg*, *supra*, 397 U.S. at 266. The notice cannot simply parrot the applicable statutory or regulatory language; it must provide actual notice to the recipient of the alleged basis for termination. *Young v. Maryville Housing Auth.*, 2009 WL 2043891, *6 (E.D. Tenn.); *Pratt v. Hous. Auth. for City of Camden*, 2006 WL 2792784, *6 (D.N.J.).

"The requirement of notice is to inform the tenant of the allegations so that he can prepare a defense." *Edgecomb v. Housing Auth. of Town of Vernon*, 824 F. Supp. 312, 314 (D. Conn. 1993). Perfection, however, is not required. *Ramirez v. Hous. Auth.*, 1998 WL 648477, *5 (5th Cir.) (unpublished disposition).

Plaintiffs allege defendants sent plaintiff Fuller a Notice of Cancellation stating she would be terminated for "FRAUD IN STATING THAT YOU HAVE CUSTODY OF [D.W.]." [Doc. 12, at 12]. The notice does not assert the basis for that allegation.

The omission does not matter. The Notice of Cancellation enabled Fuller to prepare a defense. While more information would have given a better preview of what to expect at the informal hearing, Fuller had enough notice to respond to LMHA's assertion. *See Ramirez*, *supra*, 1998 WL 648477, *5.

Defendants' motion to dismiss is granted as to this claim.

8

## 2. Opportunity to Confront and Cross-Examine Witnesses

Defendants argue: 1) plaintiff Fuller does not have standing to bring any claims;[3] and 2) the Juvenile Court Entry, Hearing Exhibit B, was the only document Hearing Officer Renner needed for her decision.

Plaintiffs allege that the evidence presented at the hearing included a letter written by Jason Watts, the father of D.W., stating that Fuller told people she had custody of D.W., and court documents. Plaintiffs also allege that Fuller was not provided an opportunity to examine any document. Fuller also alleges that she was not provided an opportunity to cross-examine Watts.

Plaintiffs have alleged facts in the complaint – namely that the letter from Jason Watts was the basis for the fraud allegation, and Fuller was not permitted to cross-examine Watts – which, if accepted as true, support a valid claim for a due process violation.

Hearsay is admissible at such hearings, but it is improper for a hearing officer to rely solely on hearsay evidence, as "the opportunity to confront and cross-examine witnesses is essential when the information supplied by those witnesses is the reason for the loss of benefits." *Edgecomb*, *supra*, 824 F. Supp. at 316 (citing *Goldberg*, *supra*, 397 U.S. at 269-70.). Where, as here, the resolution of the dispute depends on disputed issues of fact, due process requires an opportunity to confront and cross-examine adverse witnesses. *Goldberg*, *supra*, 397 U.S. at 269.

---

[3] This argument, based on defendants' cessation of the challenged practice, is not well-taken. First, "[a] defendant's voluntary cessation of a challenged practice does not moot a case. Rather, voluntary conduct moots a case only in the rare instance where subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *League of Women Voters v. Brunner*, 548 F.3d 463, 473 (6th Cir. 2008) (internal quotation omitted). Second, Fuller was allowed to remain on the program only if she removed her son from the unit. This represents conditional reinstatement.

Whether Renner in fact relied solely on the court document in her decision is irrelevant to the current motion. Plaintiffs have alleged facts that, when accepted as true, support a valid claim for relief.

Defendants' motion to dismiss is denied as to this claim.

### 3. Failure to Base Decisions Solely on Evidence at Hearing and Issue a Written Decision Specifically Stating the Reasons for the Decision

Defendants claim the written decisions complied with the relevant regulation.[4]

Plaintiffs assert: 1) the fact that there was no representative from LMHA at the informal hearing and LMHA presented no evidence states a claim under the third claim for relief; 2) only plaintiffs' eighth claim, not her Fourteenth Amendment due process claim, addresses the legality of hearing decisions.

Plaintiffs' eighth claim for relief is a claim that defendants' procedures violated 42 U.S.C. § 1437(d), § 1437(f), and 24 C.F.R. § 982.555. I therefore address this claim in the statutory section of this opinion.

### 4. Fourth Claim: Impartial Decision-Maker

Plaintiffs claim that where no LMHA representative is at the hearing, the Hearing Officer impermissibly performs both prosecutorial and adjudicative functions.

Such combination of functions in the same official or agency alone is not a violation of due process. *See Withrow v. Larkin* 421 U.S. 35, 47-48 (1975). An administrative agency usually "will necessarily serve as both prosecutor and as judge" in its hearing. *Cobb v. Yeutter*, 889 F.2d 724, 730

---

[4] Defendants have not asserted any argument regarding the first prong of plaintiffs' third claim, that "Defendants fail to make a decision, based solely on the evidence adduced at the hearing." [Doc. 12, at 18]. I therefore do not address the validity of that claim and deny the motion to dismiss as to it.

(6th Cir. 1989). Like the admission of hearsay, having the Hearing Officer both present and consider evidence at the hearing does not alone violate procedural due process. *See Utica Packing Co. v. Block*, 781 F.2d 71, 77 (6th Cir. 1986).

> A party alleging unconstitutional bias
>
> must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.

*Withrow*, *supra,* 421 U.S. at 47.

But minimum due process nevertheless requires a hearing before a *neutral* adjudicator. *See*, *e.g.*, *Matthews v. Eldridge*, 424 U.S. 319, 344 (1976) (the requirement of neutrality helps to guarantee life, liberty, or property are not taken based on an erroneous notion of the facts or the law).

Where a plaintiff can show that a single individual performed more than one function or where the same person acted as both adjudicator and legal representative for the agency, bias is more likely. *Cf. Benko v. Judges' Retirement Sys.*, 1998 WL 199798, *4 (6th Cir.) (unpublished disposition) (holding that there was no risk of bias because there was no showing that any individual with the Office of the Attorney General performed more than one function and because different individuals played the roles of adjudicator and legal counsel).

To have, as in this case, a *single individual* in the agency's employ performing the dual functions of advocate and adjudicator thus raises serious constitutional concerns. Impermissible bias on the part of a hearing officer can exist where the "decisionmaker was engaged in adjudicative and executive functions in violation of the principle of separation of powers." *Hammond v. Baldwin*, 866

11

F.2d 172, 177 (6th Cir. 1988); *accord Hostetler v. Perrysburg*, 998 F. Supp. 821, 823 (N.D. Ohio 1998).

Where, as in this case, a plaintiff alleges a defendant "fail[ed] to conduct informal hearings with an impartial hearing officer" [Doc. 12, at 18], she satisfies the pleading requirements of Fed. R. Civ. P. 12(b)(6). Determining whether there was a "real risk of actual bias," *Withrow*, *supra,* 421 U.S. at 47, must await development of the record and further proceedings.

Defendants' motion to dismiss is denied as to this claim.

## B. Statutory Claims

### 1. Fifth Claim: Provide Specific Grounds for Termination

Defendants move to dismiss plaintiffs' fifth claim, which is the statutory counterpart to plaintiffs' due process notice claim. Defendants' motion on this claim shall be granted for the same reasons for which I dismiss this component of plaintiffs' due process claim.

The relevant regulation, 24 C.F.R. § 982.555(c), states that the notice to the family must:

(i) Contain a brief statement of reasons for the decision,
(ii) State that if the family does not agree with the decision, the family may request an informal hearing on the decision, and
(iii) State the deadline for the family to request an informal hearing.

The Notice of Cancellation provided to Fuller sufficed under the rule. As discussed above, while more information would have given a better preview of what to expect at the informal hearing, Fuller knew the gravamen of the allegation. *See Ramirez*, *supra*, 1998 WL 648477, *5.[5]

Defendants' motion to dismiss is granted as to this claim.

---

[5] She also knew whether D.W. lived in her unit.

12

### 2. Sixth Claim: Opportunity for Hearing Before Impartial Party on Timely Request

Plaintiffs' sixth claim is the statutory counterpart to their constitutional impartiality claim. Defendants' motion on this claim shall be denied for the same reasons for which I deny defendants' motion to dismiss the constitutional counterpart..

Section 1437(d) of Title 14 requires a public housing agency to have a grievance procedure whereby a tenant has "an opportunity for a hearing before an impartial party upon timely request." As stated above, plaintiffs' claim of partiality survives defendants' motion to dismiss..

### 3. Seventh Claim: Opportunity to Question Witnesses

Plaintiffs' seventh claim is the statutory counterpart to their constitutional confrontation and cross-examination claim. Defendants' motion on this claim shall be denied for the same reasons for which I deny their motion with regard to the constitutional contentions.

"Participants have the right to cross examine any witness upon which a PHA relies." *Edgecomb*, *supra*, 824 F. Supp. at 315 (quoting *Rules and Regulations, Dep't of Hous. & Urban Dev.*, 55 Fed. Reg. 133, at 28,541 (July 11, 1990)).

Plaintiffs have alleged facts in the complaint – namely that the letter from Jason Watts was the basis for the fraud allegation, and that Fuller was not permitted to cross-examine Watts – which, if true, support a valid claim for a statutory violation.

Defendants' motion to dismiss is denied as to this claim.

### 4. Eighth Claim: Standard of Proof and Sufficiency of Statement of Reasons for Decision

13

Defendants allege that the applicable regulation, 24 C.F.R. § 982.555(e)(6), only requires that the written decision state briefly the reason for the decision.[6] They contend Hearing Officer Renner's decision did so.[7]

The relevant regulation, 24 C.F.R. § 982.555(e)(6) states:

Issuance of decision. The person who conducts the hearing must issue a written decision, stating briefly the reasons for the decision. Factual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing. A copy of the hearing decision shall be furnished promptly to the family.

---

[6] Again, defendants make no argument regarding plaintiffs' claim that they fail to "base factual determinations on a preponderance of the evidence." [Doc. 12, at 21]. As such, I deny the motion to dismiss as to any such claim.

[7] Plaintiffs' complaint references Renner's January 16, 2009, letter decision sent to Woods. Defendants attach this letter to the motion to dismiss. [Doc. 17-1]. I may consider the full text of the administrative decision because "[d]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *abrogated on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *see also id.* ("Courts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies." (internal citation omitted)).

The Sixth Circuit has further explained:

[A] defendant may introduce certain pertinent documents if the plaintiff fails to do so. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied. Hence, the Seventh Circuit has held that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1993). We believe that this approach is appropriate.

*Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (internal citations omitted).

As plaintiffs referenced the administrative letter decision in the complaint and it is central to their claim, I may appropriately consider it here in a motion to dismiss without converting that motion to one for summary judgment. *Id.*

14

In *Ramirez*, *supra*, 1998 WL 648477, *5, the Fifth Circuit found a hearing officer's statement that the "[d]welling unit is not used solely by the residents of the Ramirez family" sufficient to comply with 24 C.F.R. § 982.555(e)(6)'s requirement of a "written decision, stating briefly the reasons for the decision."

Renner's letter to Woods states:

> According to CFR 982.551, this letter is no notify you of the final results of your informal hearing that was held on December 8, 2008 to discuss your continued eligibility as a Section 8 program participant. The hearing resulted from the fact that you vacated your unit without notice. After meeting with you at the hearing and reviewing the paperwork in your file, I have decided that you will remain terminated. This is due to the fact that you vacated your unit without notice and without our approval to rehouse.
> We have no appeal process for the hearing decisions. If you do not agree with the decision, you should seek legal counsel.

[Doc. 17-1].

The applicable regulation requires only a "brief[]" statement of "the reasons for the decision." 24 C.F.R. § 982.555(e)(6). Renner's letter twice states that the reason for Woods' termination is that she "vacated [her] unit without notice." [Doc. 17-1]. This notice is sufficient to satisfy the regulation. *Ramirez*, *supra*, 1998 WL 648477, *5.

Defendants' motion to dismiss is granted as to this claim.

### C. Qualified Immunity

An official sued in her personal capacity may be able to assert personal immunity defenses such as qualified immunity. *Kentucky v. Graham*, 473 U.S. 159, 166-167 (1985).

Under *Pearson v. Callahan*,     U.S.    , 129 S. Ct. 808, 818 (2009), courts can address the issue of qualified immunity with or without first deciding the underlying constitutional issues. Overruing *Saucier v. Katz,* 533 U.S. 194 (2001), the Court stated in *Pearson*:

15

> The [Saucier] procedure sometimes results in a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case. There are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right.

*Id.*

Immunity depends on whether the rights defendants violated were "clearly established." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982).

"A right is 'clearly established' if '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Morrison v. Bd. of Tr. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Therefore, "the relevant inquiry is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* (quoting *Saucier, supra*, 533 U.S. at 202).

In determining whether a right is clearly established, a court must find precedent for that right in a decision by the highest court of its state, the United States Supreme Court, its own Federal Court of Appeals, and to a limited degree, district courts in its circuit and appellate courts from other circuits. *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988); *Ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171, 1177 (6th Cir. 1988); *see also Waeschle v. Dragovic*, 576 F.3d 539, 544 (6th Cir. 2009).

"For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (internal citation omitted)). Nonetheless, "this is not to say that an official action is protected by

16

qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.*

The right to confront and cross-examine each witness relied on by the housing authority is clearly established. *Goldberg*, *supra*, 397 U.S. at 266-71. Where adjudication depends on resolving disputed issues of fact, due process requires an opportunity to confront and cross-examine adverse witnesses. *Id.* at 269. Defendants are therefore not entitled to qualified immunity on plaintiffs' second claim for relief.

A housing program participant's right to question any witness is also clearly established. *Stevenson v. Willis*, 579 F. Supp. 2d 913, 922 (N.D. Ohio 2008). Defendants are therefore not entitled to qualified immunity on plaintiff's seventh claim for relief.

Similarly, the right to have a decision based solely on evidence at the hearing is clearly established. *Goldberg*, *supra*, 397 U.S. at 266-71. Defendants are therefore not entitled to qualified immunity on plaintiffs' third claim for relief.

Finally, the right to a hearing before an impartial decision-maker is clearly established. *Id.* The fact that a single individual performing the "dual functions of advocate and adjudicator []raises very serious constitutional concerns[,]" is also clearly established. *Stevenson*, *supra*, 579 F. Supp. 2d at 920. Defendants are therefore not entitled to qualified immunity on plaintiffs' fourth and sixth claims for relief.

### D. Quasi-Judicial Immunity

Defendants argue that they are entitled to quasi-judicial immunity because: 1) Renner was at all times alleged in the Complaint acting in a quasi-judicial role as a hearing officer; and 2) the actions of all other defendants stem from the quasi-judicial activities of Renner and others.

Plaintiffs respond that quasi-judicial immunity is not available to defendants because they have not challenged the hearing decisions of Renner, but rather the hearing procedures. Plaintiffs also contend that even if quasi-judicial immunity were available for Renner, it does not extend to the other defendants.

A judge is entitled to absolute judicial immunity from damages suits for actions taken within her judicial capacity unless there is no jurisdiction for the action. *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). This immunity has been extended to non-judicial officials performing "quasi-judicial" duties. *Id.* "Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Id.*

To determine whether an official is entitled to absolute quasi-judicial immunity, a court "looks to 'the nature of the function performed, not the identity of the actor who performed it.'" *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (quoting *Forrester*, *supra*, 484 U.S. at 229).

Federal officers to whom quasi-judicial immunity has been found to attach include hearing officers and administrative law judges. *Balas v. Leishman-Donaldson*, 1992 WL 217735, *5 (6th Cir.) (unpublished disposition) (citing *Butz v. Economou*, 438 U.S. 478, 513 (1978)).

Quasi-judicial immunity from damages should be granted to state officials when "(1) their positions are akin to that of judges; (2) the potential for vexatious lawsuits is great; and (3) enough safeguards exist to protect [the complainant's] constitutional rights." *Purisch v. Tenn. Tech. Univ.*, 76 F.3d 1414, 1422 (6th Cir. 1996) (citing *Watts*, 978 F.2d at 278 (quoting *Bettencourt v. Bd. of Registration In Med.*, 904 F.2d 772, 784 n.15 (1st Cir. 1990))).

18

A caveat exists, however, that quasi-judicial immunity attaches only where protections such as those provided by the Administrative Procedure Act (APA) are available. *Hale v. Cody*, 1999 WL 685927, *2 (6th Cir.) (unpublished disposition) (citing *Watts v. Burkhart*, 978 F.2d 269, 274-75 (6th Cir. 1992)).

The APA, for example, provides a number of safeguards to guarantee the independence of hearing examiners. *Butz, supra,* 438 U.S. at 513 ("Prior to the [APA], there was considerable concern that persons hearing administrative cases at the trial level could not exercise independent judgment because they were required to perform prosecutorial and investigative functions as well as their judicial work  .  .  .  and because they were often subordinate to executive officials within the agency  .  .  .  the Administrative Procedure Act contains a number of provisions designed to guarantee the independence of hearing examiners").

Because other legal remedies exist for a defendant in, for example, the form of judicial review, and "agency officials must make the decision to move forward with an administrative proceeding free from intimidation or harassment," those "officials who are responsible for the decision to initiate or continue a proceeding subject to agency adjudication are entitled to absolute immunity from damages liability for their parts in that decision" *Id*. at 516.

A government entity, however, cannot claim quasi-judicial immunity. *Everson v. Leis*, 556 F.3d 484, 493 n.3 (6th Cir. 2009) "The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment." *Graham*, *supra*, 473 U.S. at 167.

In this case, Renner acted in a quasi-judicial capacity in adjudicating plaintiffs' benefits determinations. She is entitled to quasi-judicial immunity for her role as hearing for her actions

19

as hearing officer. Plaintiffs' attempts to characterize the program termination policies and procedures as ministerial are unconvincing.[8]

Though plaintiffs challenge defendants' conformance with constitutional and statutory requirements, defendant is bound by law to provide plaintiffs with these necessary protections. Therefore, Renner is entitled to quasi-judicial immunity from damages for her role as hearing officer.

The other defendants are not, however, entitled to quasi-judicial immunity. Government entities cannot claim quasi-judicial immunity. *Everson*, *supra*, 556 F.3d at 493 n.3.

Willis and Miracola both hold administrative and managerial roles within LMHA as opposed to judicial or quasi-judicial ones. Defendants argue that "the allegations against Director Willis and Program Director Miracola stem from the quasi-judicial activities of Renner and others "thereby entitling all defendants to quasi-judicial immunity." [Doc. 17, at 16]. This argument is both unpersuasive and a misapplication of the law.

Courts "have been quite sparing in [their] recognition of absolute immunity, and have refused to extend it any further than its justification would warrant." *Antoine*, *supra*, 508 U.S. at 433 n.4. Importantly, "the touchstone for the doctrine's applicability has been performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights.

---

[8] Plaintiffs cite *Antoine v. Byers & Anderson*, 508 U.S. 436-37 (1993) for the proposition that: "As distinguished from the hearing decision itself, the program termination policies and procedures at issue here are ministerial, not discretionary, in nature." [Doc. 19, at 20]. In that case, the Supreme Court held that court reporters were not entitled to absolute immunity because they are afforded no discretion in the carrying out of their duty. *Antoine, supra,* 508 U.S. at 436. This is clearly distinguishable from the current case, in which it is charged that Renner exercised her discretion in a number of ways including determining the evidence on which to rely and the information included in final termination statements.

*Id.* at 435-36 (internal quotation omitted). Willis and Miracola perform no such function. They are therefore not entitled to absolute quasi-judicial immunity.

### D. Official Capacity Claims

Defendants Miracola and Renner request that I dismiss the official capacity claims against them as duplicative.

Plaintiffs concede that the claims against Miracola should be dismissed as redundant, but allege that "the official capacity suit against Hearing Officer Renner may not be redundant because her official role within LMHA is currently unknown." [Doc. 19, at 20].

Where a plaintiff seeks equitable relief, rather than damages, against an individual governmental defendant, the plaintiff can sue the individual in her official capacity. *See*, *e.g.*, *MSA Realty Corp. v. State of Ill.*, 990 F.2d 288, 291 (7th Cir. 1993) (providing that "state officials may be sued in their official capacities for injunctive relief, although they may not be sued for money damages") (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) and *Graham*, *supra*, 473 U.S. at 167 n.14); *Ameritech Corp. v. McCann*, 297 F.3d 582, 586 (7th Cir. 2002).

However, the same is not so with regard to Renner, even though it is how she conducted the hearing that gives rise to plaintiff's challenge. An official capacity suit is essentially a lawsuit brought against the entity itself. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

Plaintiff claims that Renner's role within LMHA has not been clarified, and that "while Hearing Officer Renner may be an employee of LMHA, she may also be an independent contractor in which case being an official capacity lawsuit would be appropriate." [Doc 20, at 20].

21

It is unclear how Renner's status as an independent contractor would strengthen plaintiffs' argument regarding lack of redundancy. If Renner were found to be an independent contractor, a viable official capacity claim would then be a claim against LMHA, thus placing us squarely back in the same situation in which we began. *See*, *e.g.*, *Wells v. Edward*, 2007 WL 2462658, *1 (E.D. La.) (holding that any official-capacity claim filed against doctor working as independent contractor at state hospital is in reality a claim against state itself and is barred by Eleventh Amendment).

For these reasons I dismiss the official capacity claims against defendants Miracola and Renner.

### Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT defendants' joint motion to dismiss [Doc. 17] be, and the same hereby is granted in part and denied in part. A telephone pretrial conference is set for Monday, October 4, 2010 at 9:00 a.m.   The Court will initiate the phone call.

So ordered.

s/James G. Carr
U.S. District Judge

22