**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Nancy Woods, et al.,                                        Case No. 3:09CV2412

              Plaintiffs

        v.                                                           **ORDER**

Linnie Willis, et al.,

              Defendants

This is a § 1983 suit by present and former recipients of benefits under the Housing Choice Voucher Program of § 8 of the U.S. Housing Act of 1937 ("Housing Act"), 42 U.S.C. § 1437f. Defendants administer the § 8 program in which the plaintiffs participate and participated.

Plaintiffs claim that defendants have illegally deprived them of their property interest in the § 8 Housing Choice Voucher Program without due process and in violation of federal law. They seek declaratory, injunctive and monetary relief.

Pending are the parties' counter-motions for summary judgment. Defendants request summary judgment against plaintiffs Caulene Fuller [Doc. 39] and Nancy Woods [Doc. 40]. The plaintiffs in turn seek summary judgment against the defendants. [Doc. 49].

For the reasons that follow, defendants' motion as to Caulene Fuller is granted in part and denied in part. Defendants' motion as to Nancy Woods is granted. Plaintiffs' motion is granted in part and denied in part as to Fuller and denied as to Woods.

**Background**

**1. The § 8 Housing Program**

Congress enacted § 8 as part of the United States Housing Act, 42 U.S.C. § 1437f, to assist low-income families in obtaining decent housing and to promote economically-mixed housing. Local Public Housing Authorities (PHA) administer § 8 and are responsible for, *inter alia*: 1) determining tenant eligibility under the applicable regulations; 2) providing selected tenants with an overview of the program and a voucher to obtain benefits; and 3) denying and terminating assistance when necessary. An Administrative Plan prepared by the PHA governs § 8.

The amount of assistance granted to a participant depends on the number of persons residing in the household. The PHA must approve the composition of the family residing in the unit.

Families approved for the § 8 Housing Choice Voucher Program select and rent units that meet program housing quality standards. 24 C.F.R. § 982.1(a)(2). The PHA must approve the dwelling and the lease, ensuring that all regulatory requirements are satisfied. *Id*. If these conditions are met, the PHA and the landlord enter into a housing assistance payments contract. *Id*.; 24 C.F.R. § 982.311(a).

Section 8 imposes responsibilities on the tenant, including disclosing income and resources, allowing inspection of the unit, promptly providing the housing authority with eviction notices, notifying the PHA before the family moves from the unit and refraining from serious or repeated violations of the lease. 24 C.F.R. § 982.551. The PHA reviews eligibility annually.

A PHA may terminate voucher assistance if a participant family "violates any family obligation under the program." 24 C.F.R. § 982.552(c)(1)(i). If the PHA determines it should terminate assistance, it must give the family the opportunity to have an informal hearing before termination of housing assistance. 24 C.F.R. § 982.555(a)(1)(v). At the hearing, the family must have the opportunity to present evidence and question any witnesses. 42 U.S.C. § 1437d(k); 24 C.F.R. § 982.555(e)(5).

The housing authority must adopt written procedures for conducting informal hearings. 42 U.S.C. §§ 1437d(k), 1437c-1(d)(6); 24 C.F.R. § 982.555(e)(6). The person who conducts the hearings must issue a written decision stating briefly the reasons for the decision. 24 C.F.R. § 982.555(e)(6). Factual determinations require a preponderance of the evidence presented at the hearing. *Id.*

Defendant Lucas Metropolitan Housing Authority (LMHA) administers § 8 to low-income individuals and families in Lucas County, Ohio. LMHA conducts briefing sessions for § 8 families that highlight significant federal, state, and local fair housing laws. These briefings provide instructions concerning the participants' right to an informal hearing in response to certain actions by LMHA. A housing specialist is assigned to each family.

When issues arise that may be cause for terminating a participant's voucher, the housing specialist or inspector advises the managers of the issue, and they determine whether to terminate the participant's voucher. LMHA issues notice to the participant, informing her of the reason for termination and her right to an informal hearing. After a participant requests a hearing, LMHA schedules the hearing. The housing specialist assembles the relevant documentation for the hearing officer.

Defendant Margaret Miracola is the Director of the Housing Choice Voucher Program. She manages a staff of twenty-eight employees and supervises hearing officers Candace Renner and Vivian Bush.

The plaintiffs in this case, Nancy Woods and Caulene Fuller, participated in the LMHA § 8 Housing Choice Voucher Program ("§ 8 Program") until their terminations from the program.

## 2. Plaintiffs' Hearings and Terminations

### A. Nancy Woods

Nancy Woods began participating in the § 8 Program in 1997. Beginning in April, 2007, she resided at 2025 Sandringham Drive, Toledo, Ohio.

LMHA scheduled Woods' unit for an annual Housing Quality Standards inspection on March 6, 2008. The property failed the inspection due to the landlord's failure to maintain the unit in accordance with housing quality standards. LMHA gave the landlord notice that the property failed the inspection and offered him an opportunity to make repairs.

On March 27, 2008, Woods attended a Rehousing Update Class at LMHA.

On April 4, 2008, the property failed a second inspection.

On April 10, 2008, LMHA notified Woods that her unit had failed two inspections, and that she must move by July 1, 2008 to avoid losing her voucher.

On May 22, 2008, Woods submitted a Request for Tenancy Approval for a different property that would allow her to transfer her Housing Choice Voucher to a new address. LMHA denied her request to move because the rent was too high.

Woods located a second address and prepared to file another request. Woods testified that when she obtained her second Request for Tenancy Approval form from housing specialist Jeannine

Hummel, Hummel removed the "Thirty Day Notice" form from the rehousing packet. This notice enables compliance with LMHA's requirement that tenants give thirty days written notice of an intent to vacate her LMHA § 8 housing. Along with the notice of intent to leave, the tenant has to provide a landlord's certification that the tenant has no outstanding debt and has not been issued notice of eviction for the tenant. Although LMHA requires this thirty day notice as a prerequsite to providing a rehousing voucher, Woods claims that Hummel told her she did not need to fill out the thirty day notice form.

On June 26, 2008, Woods submitted the second Request for Tenancy Approval. LMHA also denied this request, again indicating that the rent was too high. Also during the month of June, Woods gave notice to her landlord of her intent to vacate the rental unit.

On July 1, 2008, Woods vacated the unit because—based on the notice from LMHA—she knew that the assistance from LMHA to that rental unit would be cancelled as of that date.

Woods moved with her children into a motel.

On July 11, 2008, Woods submitted a third Request for Tenancy Approval for the same address at a reduced rent.

That same day, LMHA sent Woods a letter indicating that as of July 15, 2008, her Housing Choice Voucher eligibility/application will be terminated because she "vacate[d] without notice." [Doc. 12, at 10].

Woods contacted her attorney and requested a hearing in a letter dated July 16, 2008. LMHA did not schedule the hearing until late November, 2008, after her attorney contacted LMHA stating that she had yet to receive her requested hearing. [Doc. 37-1, at 3].

5

On December 8, 2008, Woods attended the hearing with her attorneys, George Thomas and Carolyn Brown. Candace Renner, a hearing officer, conducted the hearing. No LMHA official presented evidence or witnesses.

Woods' attorneys submitted a "position paper," arguing that the landlord and LMHA had ample notice, and any failure to provide written notice was a *de minimis* violation. The letter also stated that Woods "faced similar circumstances where a landlord's participation was terminated in the past, and she followed the same procedure she had in other circumstances." [Doc. 47-4, 60]. The lawyers also presented this position orally.

Renner asked Woods a few questions. Woods testified that she had moved without filing the written notice in 2006 and retained her voucher. Renner told Woods during the hearing that she would be reviewing the file further following the hearing in light of Woods' testimony regarding the 2006 incident. Neither Woods nor her attorneys told Renner that Hummel had instructed Woods not to file the written notice.

Renner issued a decision on January 16, 2009, upholding Woods' termination from the § 8 Program.

### B. Caulene Fuller

Fuller began participating in the § 8 Program in August, 2008. Fuller used the voucher to sign a lease at that time. In August, 2009, she used the voucher to re-house to a two-bedroom apartment in the same apartment complex after her housing specialist told her she needed a two-bedroom because her son, D.W., lived with her. When completing the application for this move, she listed D.W. as a member of the household.

Fuller did not have legal custody of D.W. An agreement adopted by the Court of Common Pleas of Sandusky, Ohio, designated Fuller as the nonresidential parent. Pursuant to the agreement, Fuller and her son's father shared visiting time equally in two-week intervals until D.W.'s enrollment in school. Fuller provided child support to D.W.'s father from her social security disability income. Beginning in September, 2007, D.W. lived with Fuller full time after his father moved from Fremont, Ohio, to Toledo.

After re-housing with the permission of LMHA, Fuller received a notice of cancellation indicating that LMHA was terminating her from the program as of October 1, 2009. The reason stated was "Fraud in stating you have custody of D.W." [Doc. 39, at 12]. Those allegations came from the child's father, and indicated that Fuller did not have legal custody of her child.

Fuller contacted her housing specialist, and on August 27, 2009, she asked for an informal hearing to challenge the termination. LMHA scheduled a hearing for September 10, 2009. Fuller did not know that there was paperwork in her file at LMHA to review. [Doc. 37-2, at 13].

Fuller also contacted her Zepf Mental Health Center Case Worker, Pauline Schulte, to write a letter in support of her defense. Schulte's letter explained why D.W. was living with Fuller and accusations about Fuller's living arrangements which the child's father had made to LMHA.

Fuller also approached her son's father. They had recently disagreed about child care for D.W., and Fuller assumed that the father was likely responsible for the fraud allegations. He denied involvement. [Doc. 37-2, at 14].

Fuller brought her aunt and her son to the hearing. Renner conducted the hearing. Renner read from a letter written by D.W.'s father stating that Fuller committed fraud by stating she had custody of D.W. Renner did not show the letter to Fuller, but Fuller identified the signature of her

7

son's father on the document on Renner's desk. Renner showed her a copy of the custody papers sent with the letter.

Fuller explained that she had never stated she had custody—only that her son was living with her at the time. She presented the letter written by Schulte. Her aunt also testified that D.W. lived with Fuller with little to no visitation with his father outside Fuller's home. Renner advised Fuller to get an attorney.

On September 29, 2009, Renner issued her decision, allowing Fuller to remain on the voucher program only if D.W. ceased to live with her until she obtained legal custody.

### 3. Prior Proceedings and Rulings

Plaintiffs Woods and Fuller filed this suit on October 16, 2009, against LMHA Executive Director Linnie Willis, Housing Choice Voucher Program Director Margaret Miracola and former § 8 Hearing Officer and mental health advocate Candace Renner in their official and personal capacities. In their November, 2009, Amended Complaint, plaintiffs alleged eight claims for relief.

On September 29, 2010, I issued an order granting in part and denying in part defendants' motion to dismiss. *Woods v. Willis*, 2010 WL 3808279 (N.D. Ohio). In that order, I found that the notice provided to plaintiffs gave enough detail to allow them to prepare a defense, and therefore was constitutionally sufficient. I also found that hearing officer Renner's decisions satisfied the requirement of 24 C.F.R. § 982.555(e)(6) that she issue a written decision briefly stating the reason for the decision. I dismissed plaintiffs' first, fifth and eighth claims and part of plaintiffs' third claim on these grounds. I also held that defendant Renner was entitled to quasi-judicial immunity, and dismissed the official capacity claims against Renner and Miracola.

The pending counter-motions seek summary judgment on the remaining claims.

**Standard of Review**

A party is entitled to summary judgment on motion under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex, supra*, 477 U.S. at 324.

In deciding a motion for summary judgment, I accept the opponent's evidence as true and construe all evidence in the opponent's favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of a material fact. *Celotex, supra*, 477 U.S. at 323. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**Discussion**

Defendants assert that there is no genuine issue of material fact regarding whether plaintiffs received procedural due process regarding the termination of their housing benefits. Plaintiffs counter that the facts support granting summary judgment to plaintiffs as a matter of law as to most of their claims, and allege there remains a genuine issue of material fact as to whether defendants

9

made termination decisions based solely on the evidence presented at the hearing. Defendants additionally seek summary judgment as to defendant Miranda Miracola.

### 1. Plaintiffs' Claims

The Fourteenth Amendment protects a person from loss of a property interest without procedural due process. *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972). Participation in a § 8 program is a property interest protected by due process under law. *Davis v. Mansfield Metro. Hous. Auth.*, 751 F.2d 180, 184 (6th Cir. 1984).

The Sixth Circuit in *Davis* concluded that existing regulations setting forth hearing procedures, including adequate notice of the grounds for termination, the right to examine relevant documents prior to hearing, the right to counsel, the right to cross-examine witnesses and the right to a written decision based solely on evidence presented at the hearing, afforded due process to program participants. *Id*. at 185 (citing 24 C.F.R. § 866.4(1) and §§ 866.53–57 (1983)).

These regulatory requirements reflect the fundamental due process requirements which the Supreme Court identified in *Goldberg v. Kelly*, 397 U.S. 254, 266–71 (1970). These include: 1) timely notice from the PHA stating the basis for the proposed termination; 2) an opportunity for the tenant to confront and cross-examine each witness relied on by the PHA; 3) the right of the tenant to be represented by counsel; 4) a decision setting forth reasons for the decision and based solely on evidence at the hearing; and 5) an impartial decision maker. *See Clark v. Alexander*, 85 F.3d 146, 150 (4th Cir. 1996).

Plaintiffs complain that LMHA violated these due process rights in terminating their vouchers by failing to provide: 1) an informal hearing before termination; 2) an opportunity for

participants to confront and cross-examine witnesses; and 3) a hearing before an impartial hearing officer.

Plaintiffs also assert claims under § 1983, alleging that LMHA violated 42 U.S.C. § 1437d(k) as promulgated through 24 C.F.R. § 982.555. During an informal hearing, § 8 Program participants are "entitled to ask questions of witnesses," 42 U.S.C. § 1437d(k)(5) and "must be given the opportunity to present evidence, and may question any witnesses," 24 C.F.R. 982.555(e)(5). Participants must also receive "an opportunity for a hearing before an impartial party upon timely request[.]" 42 U.S.C. § 1437d(k)(2); see also 24 C.F.R. § 982.555(e)(4).

I discuss plaintiffs' due process and statutory claims regarding the opportunity to confront and cross-examine witnesses (claims two and seven) and regarding the impartiality of the hearing officer (claims four and six) together.

Defendants argue that they provided plaintiffs appropriate procedural due process.

### A. Notice

In their first claim for relief, plaintiffs alleged that defendants failed to provide timely notice to program participants before terminating their right to continued housing assistance. They additionally alleged in that same claim that it was defendants' practice to terminate housing assistance before the tenant had an opportunity for a hearing.

In my September 27, 2010, order granting in part defendants' motion to dismiss, I dismissed plaintiffs' first claim for relief. Having found that plaintiff McCullough, who did not receive a hearing before LMHA terminated her benefits, lacked standing to proceed, my opinion on this claim addressed only the notice given to Fuller.

Defendants' motions for summary judgment nevertheless devote nearly ten pages to argument that both Woods and Fuller received proper and timely notice as to the basis for the proposed terminations.

Plaintiffs acknowledge in their reply that I had dismissed their claims regarding the sufficiency of the notice. But they assert that their claim that termination improperly occurred before the hearing remains, and present facts showing that Woods did not receive a hearing for nearly five months after she requested one, and was denied re-housing pending the hearing.

Defendants, perhaps prompted by plaintiffs' concession, argue in response that my ruling did not exclude any aspect of plaintiffs' first claim from dismissal. They also claim that Woods' counsel requested the delay without also requesting that her voucher be extended, and finally they argue that 24 C.F.R. § 982.555(a)(1)(v) does not require a hearing before termination.

I need not address the merits of the claim because I dismissed it in its entirety in my September 27, 2010 order. *Woods, supra*, 2010 WL 3808279, *4. Plaintiffs are correct that my decision did not discuss the timeliness of either the notice or the hearing in relation to the termination, but such was not asserted by the plaintiffs in their briefing except as to plaintiff McCullough. Nor does the complaint plead facts that would have allowed me to intuit that they were asserting this claim based on facts relevant to Woods. A motion for summary judgment is not the medium for resuscitating departed claims. Plaintiffs had, but did not take, the opportunity to make their arguments then. Now is too late to do so.

### B. Opportunity to Confront and Cross-Examine Witnesses

Plaintiffs claim that LMHA failed to give them the opportunity during the hearings to confront and cross-examine adverse witnesses. Defendants argue that the LMHA has no duty to

produce witnesses solely for the purpose of cross-examination, hearsay evidence is permitted and the hearing officer relied in neither case on testimony other than that of the participants.

Plaintiffs concede that a hearing officer may consider hearsay evidence so long as it is reliable and substantiated. See 24 C.F.R. § 982.555(e)(5). The first question, thus, is whether the hearing officer considered hearsay evidence.

The decision in Woods' termination did not rely on hearsay. LMHA terminated Woods' voucher because she had vacated her unit without supplying the required thirty-day written notice. This was not disputed: Woods herself acknowledged that she had vacated the unit without providing the thirty-day written notice.

In Fuller's case, the facts are not so straightforward. The hearing officer's decision read:

> According to CFR 982.551, this letter is to notify you of the final results of your informal hearing that was held on September 10, 2009 to discuss your continued eligibility as a Section 8 program participant. The hearing resulted from the fact that you were involved in fraud, stating custody of [D.W.]. As a result of your hearing, you may remain on the program with the removal of [D.W.], until such time as you are granted legal custody. It is recommended you seek legal counsel for this matter.

[Doc. 39-6].

Contrary to defendants' characterization, there is no indication that Renner found no intent to defraud the housing authority. The decision plainly states that the hearing resulted "from the fact that you were involved in fraud."

Defendants would have me infer that Renner determined there was no intent to defraud LMHA from the fact that Renner allowed Fuller to choose between remaining on the § 8 Program or continuing to provide a home for her four-year-old son. And this inference would then permit a finding that Renner had not relied on hearsay, as the letter by D.W.'s father is the only allegation of fraud.

But even if I were to ignore the plain language of the decision, the rationale for Renner's decree that Fuller must remove her son from her home is entirely absent. While the Judgment Entry Order of the Common Pleas Court shows that Fuller did not have legal custody—a point she never contested—it also shows that the parents agreed to split physical custody equally. Fuller's testimony and evidence established, moreover, that D.W. had been living with her full-time for over a year.

The only reasonable conclusion is that Renner did not merely consider the hearsay statements of D.W.'s father in reaching her decision, but that these statements were essential to that decision.

As I stated in my earlier opinion, hearsay is admissible at such hearings, but it is improper for a hearing officer to rely *solely* on hearsay evidence, as "the opportunity to confront and cross-examine witnesses is essential when the information supplied by those witnesses is the reason for the loss of benefits." *Edgecomb v. Hous. Auth. of Vernon*, 824 F. Supp. 312, 315-16 (D. Conn.1993) (citing *Goldberg, supra*, 397 U.S. at 269-70).

That is precisely what happened here.

The LMHA argues that no authority compels it to produce witnesses solely for the purpose of cross-examination by the participant. True enough–as far as it goes.

Here the flaw is not in the denial of cross-examination *per se*. The flaw here is using hearsay as the sole basis for an adverse decision. To permit it to do so would violate the participants' statutory and due process rights. While it is true that the decision here did not, strictly speaking, terminate Fuller's benefits, there can be no question that it altered those benefits to her very substantial detriment.

As the Supreme Court recognized in *Goldberg*:

> Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the

14

> reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. While this is important in the case of documentary evidence, it is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy. We have formalized these protections in the requirements of confrontation and cross-examination. They have ancient roots. . . . This Court has been zealous to protect these rights from erosion.

397 U.S. at 270 (quoting *Greene v. McElroy*, 360 U.S. 474, 496–97 (1959)).

The evidence against Fuller consisted of a court document outlining her parental rights and a handwritten note alleging fraud, written by one who was very likely "motived by malice [or] vindictiveness." Before the hearing officer could rely on such allegations against the evidence presented by Fuller, due process required that Fuller have the opportunity to confront and cross-examine D.W.'s father.

Plaintiffs' summary judgment motion as to claims two and seven as to plaintiff Fuller is therefore granted; as to plaintiff Woods it is denied.

### C. Decision Based Solely on Evidence Adduced at the Hearing

Due process requires that a decision maker's conclusion rely solely on the legal rules and evidence adduced at the hearing. *Goldberg, supra*, 397 U.S. at 271. Plaintiffs argue that because hearing officer Renner stated her intention during Woods' hearing to review the file further following the hearing, there exists a genuine issue of material fact as to whether Renner's decision relied solely on the evidence adduced at the hearing.

The facts show, however, that the LMHA made Woods' file available to her prior to the hearing and that her lawyers reviewed that file in preparation for the hearing. Renner stated that she

15

would review the file further after Woods indicated that after a similar incident in 2006, she had retained her benefits.

Woods and her counsel were both aware of the 2006 incident, and expressed no concern that Renner would be reviewing anything outside of the file. Neither Woods nor her lawyers objected when she made her comment.

Were a hearing officer to search a participant's file for some new grounds for termination beyond that discussed at the hearing, this would violate the participant's due process rights. Such a process would circumvent the participant's right to be heard—amounting to "condemnation without trial." *Ohio Bell Tel. Co. v. Pub. Util. Comm'n*, 301 U.S. 292, 300 (1937).

But it is not a violation of due process for a hearing officer to review files present at the hearing, which the participant had the opportunity to review, and which were discussed—however briefly—in the hearing.

Summary judgment is granted to defendants on plaintiffs' third claim.

### D. Impartial Hearing Officer

As the Supreme Court affirmed in *Goldberg, supra*, 397 U.S. at 271, "an impartial decision maker is essential." Plaintiffs allege that defendants failed to provide an impartial decision maker, thereby violating their due process rights.

"[O]ne claiming bias in administrative adjudication procedures has a heavy burden to shoulder." *Cobb v. Yeutter*, 889 F.2d 724, 730 (6th Cir. 1989). A party alleging unconstitutional bias "must overcome a presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).

### 1. Candace Renner

Plaintiffs argue that Renner was not an impartial decision maker because she served a dual role in the LMHA and because she received insufficient training. Both circumstances, plaintiffs alleged, resulted in a bias against participants.

Renner, the hearing officer for both Woods and Fuller, served a dual role during her time with LMHA. She was a hearing officer and a mental health housing specialist. She reported to Miracola in both positions. She would often switch between these roles during the day.

But the combination of investigative and adjudicative functions does not necessarily create an unconstitutional risk of bias. *Withrow, supra*, 421 U.S. at 47. Renner's work as a mental health housing specialist—assuming that such work involved investigative functions—does not appear to have any relation to the decisions in this case. Plaintiffs have not shown how her dual positions at LMHA could have resulted in any bias against them. The bare fact that she had two positions cannot "overcome a presumption of honesty and integrity." *Id*.

Plaintiffs also argue that Renner's lack of training resulted in an unfair "structural bias" because it resulted in her misunderstanding the burden of persuasion and in issuing decisions beyond the scope of the hearing.

Hearing officers can attend online training programs, and Renner attended at least one of these. LMHA also provided hearing officers with its Administrative Plan and a Housing and Urban Development Housing Choice Voucher Guide, which Miracola reviewed with the hearing officers.

Renner understood her role during the informal hearings was "to determine whether or not the termination that has already occurred will stand."[Doc. 37-4, at 5].

Plaintiffs allege that this unconstitutionally shifts the burden of persuasion to the participants to prove that they did not violate an obligation.

17

The purpose of these informal hearings is to give participants an opportunity to be heard—to present their side of the dispute. The fact that due process requires the opportunity to be heard implies that if participants choose not to exercise their rights to an informal hearing, then the PHA may proceed to terminate their benefits. The procedure thus shows that while the PHA bears the burden of persuasion, a participant still must rebut the PHA's basis for decision. Recognizing this fundamental truth—that participants must necessarily respond to factual allegations in a notice of termination—does not reallocate this burden. Once the participants have done so, the PHA must overcome that showing to terminate their benefits.

Although Renner improperly relied on hearsay statements in her decision regarding Fuller's benefits, this error does not mean that she was not impartial. Error alone is not an indication–much less proof–of bias.

Plaintiffs have not submitted any evidence that Renner was biased against them. Defendants' motions for summary judgment are therefore granted as to plaintiffs' fourth and sixth claims.

### 2. Margaret Miracola

Defendants argue that Miracola is entitled to summary judgment in this matter because plaintiffs have not shown that Miracola had any direct contact with either Woods or Fuller or made any decision regarding their informal hearing outcomes. They state that the only evidence that could link Miracola to any act or failure to act related to their cases is her ability to initiate changes to the Administrative Plan.

Plaintiffs argue in response that Miracola, as Director of LMHA's § 8 Program, was responsible for managing the program in compliance with state and federal law, and for training and supervising the hearing officers. Miracola was Renner's direct supervisor.

Plaintiffs have, however, not shown that Miracola played any role in the sole due process violation that survives–namely, Fuller's claim based on Renner's reliance solely on hearsay to sustain the termination of her benefits. Absent proof of Miracola's personal involvement in Renner's unconstitutional misstep, plaintiff cannot prevail on her claim against her. *E.g.*, *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

## Conclusion

No due process violation tainted the process as to plaintiff Woods. With regard to plaintiff Fuller, error of a constitutional magnitude occurred when Renner relied solely on untested hearsay in reaching the determination that Fuller had committed fraud on the LMHA.

For the foregoing reasons, it is hereby:

ORDERED THAT:

1. Defendants' motion for summary judgment as to the claims by Nancy Woods [Doc. 40] be, and the same hereby is granted;

2. Defendants' motion for summary judgment as to the claims by Caulene Fuller [Doc. 39] be, and the same hereby is granted in part and denied in part;

3. Plaintiffs' motion for summary judgment [Doc. 49] be, and the same hereby is granted in part and denied in part.

A scheduling conference is set for September 21, 2011 at 4:00 p.m.

So ordered.

/s/ James G. Carr
Sr. United States District Judge