IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Nancy Woods, et al.,                                           Case No. 3:09CV2412

       Plaintiffs

       v.                                                 **ORDER**

Linnie Willis, et al.,

       Defendants

       This is an action by low-income individuals whose residential tenancies in Lucas County, Ohio, the Lucas Metropolitan Housing Authority (LMHA) supports through its Housing Choice Voucher (HCV) program. Plaintiffs sued three LMHA employees, alleging eight claims as to each defendant.[1]

       The defendants sought dismissal of all claims under Fed. R. Civ. P. 12(b)(6). I granted the motion as to all claims by one plaintiff and as to some of the claims by the other two plaintiffs. This left claims of lack of hearing officer impartiality as to the two remaining plaintiffs and a claim by one of them, Ms. Caulene Fuller, of a due process violation at her hearing. *Woods v. Willis*, 2010 WL 3808279 (N.D. Ohio). That claim, unique to Ms. Fuller and based on highly individualistic facts, was that the hearing officer decided to terminate her from the HCV program due to alleged fraud on her part solely on the basis of a hearsay letter.[2]

---

[1] To be sure, constitutional and statutory claims were duplicative in their factual basis, so referencing twenty-four separate claims somewhat overstates the scope of plaintiffs' complaint. On the other hand, to some extent, different plaintiffs alleged different factual grounds for their claims.

[2] The violation involved the fact that Ms. Fuller had her child living with her, though she did not, at the time, have a custody order for the child. The letter, which alleged that Ms. Fuller had perpetrated a fraud on the agency, came from the child's father, who had abandoned Ms. Fuller and their child. Ms. Fuller has since obtained *de jure* (a custody order) that which she had had *de facto* all along – the care and custody of her child.

Summary judgment practice followed. I held that the hearing officer's reliance solely on the hearsay letter violated Ms. Fuller's right to due process. I granted summary judgment for the defendants as to her claim (and that of the other remaining plaintiff) that the hearing officers had not been impartial. *Woods v. Willis*, 825 F. Supp. 2d 893, 902 (N.D. Ohio 2011), *aff'd*, 515 F. App'x 471 (6th Cir. 2013) (Unpublished disposition).

The hearing officer's error at Ms. Fuller's hearing, though of constitutional dimension, was isolated, idiosyncratic, unintentional, and aberrational. There was nothing systemic about it. It did not require prospective injunctive relief to remedy. Nor was any other relief needed in Ms. Fuller's favor: by agreement of the parties, she had retained her HCV participation during the pendency of the litigation.

Following affirmance of my decision by the Sixth Circuit, *Woods v. Willis*, 515 F. App'x 471 (6th Cir. 2013) (Unpublished disposition), plaintiffs' counsel submitted an application for an award of attorneys' fees under 42 U.S.C. § 1988. (Doc. 86). In that petition, counsel, despite the minuscule extent, in relative and absolute terms, of their accomplishment, sought compensation in the amount of $213,909.40 for all work done on all claims.

In response, LMHA counsel argued, *inter alia*, that no award was allowable, as no plaintiff was a prevailing party as to any claim. I disagreed, finding that Ms. Fuller was a prevailing party as to one claim. *Woods v. Willis,* — F. Supp. 2d —, —, 2013 WL 5406203, *2 (N.D. Ohio 2013). I ordered plaintiffs' counsel to submit a revised fee petition limited to those fees and costs "which relate *directly* to their work on" the sole issue as to which they prevailed. *Id*., *3 (emphasis supplied).

---

Though carved up into constitutional (confrontation) and statutory (right to question) claims, the sole issue was whether the agency could properly rely solely on an hearsay document of its sort in the face of the plaintiff's assertion of lack of intent to defraud the agency. She readily admitted that her child was with her, but contended her failure to disclose that fact to the agency did not manifest *intent*, an element of fraud.

Plaintiffs' counsel has now submitted a revised fee petition, in which they now seek an award of $82,986.34. In other words, plaintiffs' counsel claim that, for their work *directly* on the sole issue among the two dozen which they asserted, they are entitled to compensation of about one third of all the time they spent on the case.

Plaintiffs' counsel have the burden of proof as to the reasonableness of their claimed fees. *See, e.g.*, *Reed v. Rhodes*, 934 F. Supp. 1492, 1499 (N.D. Ohio 1996) ("Existing legal precedent recognizes that a prevailing applicant seeking fees bears the burden of *proving entitlement to an award . . .*") (emphasis in original). Their revised petition fails to take fully and fairly into account how little their suit accomplished – especially when measured by the number of their unsuccessful claims and their contention that constitutional and statutory violations permeated the HCV program termination process.

I could find, and I believe I could do so without fear or risk of reversal, that plaintiffs' counsel have failed to meet their burden of proof as to a reasonable award for the work done on the single successful claim. I decline, however, to deny the petition outright and *in toto*.[3]

The one claim on which plaintiffs prevailed raised a straightforward question: did Ms. Fuller receive due process when the hearing officer relied solely on hearsay in deciding to terminate her on the basis of defrauding the agency. This issue, viewed on its own, was not complex, and I had, candidly, little difficulty deciding it in her favor. Neither I nor counsel had to plumb any deep, murky, or obscure due process depths to argue, on the one hand, or for me to be persuaded, on the other, that the hearing officer had committed an error of constitutional magnitude.

---

[3] I want to note that I believe I could simply have denied the original petition, in light of its unfounded demand for compensation for all claims, including all unsuccessful claims, on the basis of its facial unreasonableness and lack of factual or legal foundation. Instead of doing so, I offered and expected counsel to take the opportunity to scale back their demand to a reasonable and sustainable amount in light of how little they had accomplished. They did not take that opportunity.

Without acknowledging the relative simplicity of their sole successful claim, counsel seek to support their claim for $82,986.34 in fees and costs with inapposite and overly elaborate formulae, complex analysis, and extensive argument. Which leaves me with the most difficult challenge that can confront a judge in a civil case – or, at least, in my own view and experience, the most difficult task that *I* face in civil cases.

This task is difficult for several reasons. First, it calls on a judge to second guess the billing time allocation and billing judgment of experienced and reputable attorneys. This task calls on the judge to take the place of someone who does not exist in litigation of this sort: the cost-conscious, ever-attentive client who is an engaged and active participant from day one of the events giving rise to the litigation.

Here, of course, no one received monthly statements. No one had the expertise to question the soundness of the attorneys' assessment of the viability of claims, or suggest that the time and expense of pursing one or more claims might not be worth the risk of failure in light of prevailing law. No one rides shotgun in cases like this.

Instead, the judge in a fee-shifting case serves as a *post-hoc* surrogate for the non-existent bean counting client. The judge, moreover, is called on to declare, unlike the bean counting client, what was or was not reasonable long after the fact.

At best this involves an element of guesswork and even speculation. To be sure, a judge who, like myself, has done this often, has a residuum of experience to guide the decision and control his or her instincts. But still, especially for a judge who, like myself, spent but few years in the hurly-burly of practice (and that long, long ago, when things were very, very different) has almost no in-built handholds as he or she tries to find the way.

Before me is a welter, a plethora, an excess of opaque computerized billing sheets, theory, contention, and argument about what I should do and why I should do it. Defense counsel still insists

that nothing is due to the plaintiffs' attorneys. While plaintiffs' counsel have reduced their demand considerably, they still wants too much for having accomplished, by any objective measure, very little.

In this case, one mistake was spotted, challenged, and fixed (indeed, it was fixed early on by agreement of the parties). The agency did not have to make any course correction. The client continued in her (relative) quiet enjoyment of her participation in the HCV program, and will no doubt remain there.

The always difficult job under § 1988 of determining a reasonable fee is especially hard in this case. Given counsel's failure to submit a more reasonable request, I have concluded that the most direct and appropriate way in which to determine the amount of an award is to hypothesize that this case from the outset only involved the one issue as to which plaintiffs prevailed. In other words: what would an attorney reasonably have done and earned had he or she simply investigated and asserted the hearsay/due process claim, survived a motion to dismiss, prevailed on summary judgment, and defended the outcome successfully on appeal?

Based on my experience of more than thirty years reviewing fee petitions in § 1983, employment discrimination, and other cases involving prevailing party fee-shifting, I find that the hours a reasonable, efficient, and cost-conscious attorney would have expended in such circumstances would have been:

| | |
|---|---|
| Initial interview and assessment of the circumstances and possible merits, including consultation with fellow attorneys | 12 hours |
| Initial legal research and preparation of complaint | 12 |
| Review motion to dismiss; research on and preparation of opposition | 32 |
| Preparation for and conducting discovery | 8[4] |

---

[4] I note that, in this instance, the dispositive fact – namely, reliance on the hearsay letter alone – was not disputed. Nonetheless, depositions of Ms. Fuller and the hearing officer would

| | |
|---|---|
| Review of motion for summary judgment; research and preparation of opposition | 24[5] |
| Review of appellant's brief; preparation of appellee's brief | 24 |
| Preparation and attendance at oral argument | 10 |
| Preparation of fee petition | <u>12</u> |
| Total attorney hours | 134 |

Although the revised fee petition, in all other material respects, fails to establish the reasonableness of the hours expended, I accept its allocation of time between attorneys for Advocates for Basic Legal Equality, Inc. and Legal Aid of Western Ohio, Inc. (ABLE/LAWO) (2/3 = 89 hours) and co-counsel, Relman Dane & Colfax PLLC (Relman Dane) (1/3 = 45 hours). *See* Doc. 91-1, at 2.

Rather than abstract out the different billing rates which ABLE/LAWO allocates to three separate attorneys, I conclude that a $220 per hour rate for all its hours is reasonable, though that rate is slightly higher than the hourly rate breakdown in the revised petition. I also agree that $400 per hour rate for all the Relman Dane hours is reasonable.[6]

I conclude, accordingly, that, in light of the hours a reasonable attorney would reasonablely have expended in successfully litigating the one claim in this case as to which plaintiffs prevailed, and, as well, the reasonable hourly rates, the attorneys' fee award should be:

| | |
|---|---|
| ABLE/LAWO | $19,580.00 |
| Relman Dane | 18,000.00 |
| Costs per revised statement | 1,124.50 |

---

probably have been appropriate.

[5] Counsel would have done the basic legal research *vis-a-vis* the motion to dismiss.

[6] I recognize that I am rounding up somewhat, especially with regard to Relman Dane's paralegal hours.

The total award – despite the failure of proof as to reasonableness in both the original and revised petition – is: $38,704.50.

In light of the foregoing, it is

ORDERED THAT plaintiffs' application for an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988, be, and the same hereby is granted in the amount of $38,704.50.

The Clerk shall enter judgment in favor of plaintiffs and against defendants accordingly.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge